## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

BARBARA BRACKEN

                                                    CIVIL ACTION NO.

VERSUS                                              20-72-SDD-EWD

DOUG WELBORN, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS
CLERK OF COURT FOR EAST BATON
ROUGE PARISH

## **RULING**

This matter is before the Court on the *Motion for Judgment on the Pleadings Pursuant to Rule 12(c)*[1] by Defendant, Doug Welborn, sued in both his individual and official capacities as Clerk of Court for East Baton Rouge Parish ("Defendant"). Plaintiff, Barbara Bracken ("Plaintiff") has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the following reasons, the Court finds that Defendant's motion should be DENIED.

## I.    **FACTUAL BACKGROUND**

Plaintiff began her employment as a deputy clerk at the downtown office of the East Baton Rouge Clerk of Court ("EBRCC") on November 12, 2012.[4] Plaintiff alleges that, shortly after her employment began, she was subjected to sexual harassment by

---

[1] Rec. Doc. No. 10.
[2] Rec. Doc. No. 12.
[3] Rec. Doc. No. 16.
[4] Rec. Doc. No. 1-1, ¶ 4.
Document Number: 64827                                                    1

Greg Brown ("Brown"), Chief Deputy, who was Plaintiff's supervisor with immediate and successively higher authority over her.[5]

Plaintiff further alleges that, in 2012, Brown made repeated sexual advances towards her, including: requiring her to meet with him in his office alone; discussing sexual history, sexual preferences, and sexual relationships; propositioning her to have sex and/or a sexual relationship with him; and commenting on her body and sex in a threatening, harassing, and sexually charged manner.[6] Plaintiff claims she rebuffed Brown's advances.[7] In 2013, Plaintiff allegedly told Brown to cease and reported Brown's behavior to Defendant, including to Brown directly and her then-supervisor Howard Burgess ("Burgess").[8]

After reporting Brown's behavior, Plaintiff alleges he made no further sexual advances, but instead began retaliating against Plaintiff for making the complaint by threatening her job, falsely reprimanding her, removing job duties, making false accusations of poor performance, transferring her to an undesirable location, suspending her, and ultimately terminating her.[9] Plaintiff also alleges that, in November 2018, Brown openly threatened Plaintiff's job by stating to Plaintiff's supervisor, Pamela Plunkett ("Plunkett"),[10] "what took you so long to get rid of [Plaintiff]."[11] Soon thereafter, on November 8, 2018, Plaintiff alleges she met with Brown, who demanded Plaintiff sign a "false warning," which Plaintiff refused, and she complained that she was being retaliated

---

[5] Rec. Doc. No. 1-1, ¶ 3.
[6] Rec. Doc. No. 1-1, ¶ 5.
[7] Rec. Doc. No. 1-1 ,¶ 5.
[8] Rec. Doc. No. 1-1, ¶ 6.
[9] Rec. Doc. No. 1-1, ¶ 7. Defendant asserts Plaintiff was not terminated but resigned. *See* Rec. Doc. No. 12, p. 2.
[10] The record reveals that the correct spelling of the name is Plunkett; although Plaintiff refers to her in the Petition and briefing as "Pluckett."
[11] Rec. Doc. No. 1-1, ¶ 8.

against for her protected activity.[12]  In response, Brown threatened her, stating she was "going to do what [he] said she was going to do," that "nobody was going to believe" her complaint of sexual harassment, and that she was going to sign the "final warning" or "else."[13]

Plaintiff's employment ended on November 8, 2018, and it is contested whether Plaintiff voluntarily quit or was fired.[14] Plaintiff contends that she suffered retaliation because she opposed, reported, and complained about the unlawful sex-based harassment and what she reasonably believed to be unlawful sexual harassment in violation of Title VII.[15]

On March 12, 2019, Plaintiff field a Charge of Discrimination with the EEOC ("Charge") alleging discrimination based on race, sex, and retaliation between October 24, 2018 and November 13, 2018.[16]  In the Charge, Plaintiff stated the following particulars:

> I began my employment with the East Baton Rouge Clerk of Court on October 11, 2012, as a Deputy Clerk, most recently earning $15.0 per hour. Since June 2018, Ms. Pamela Pluckett [sic] harassed me by cursing at me and talking down to me. I officially reported her behavior to her supervisor, Mr. Brandon Abadie. After reporting Ms. Plucketts [sic] behavior, the harassment progressed, and she disciplined me several times for no reason including an unpaid suspension. Ultimately, I was discharged although the company claims I resigned. After applying to another job, I was given unfavorable refences although my evaluations were all above average. The company employs over 500 people.
>
> No reason was given for the action taken against me.

---

[12] Rec. Doc. No. 1-1, ¶ 8.
[13] Rec. Doc. No. 1-1, ¶ 8.
[14] Rec. Doc. Nos. 10-1, p. 1; 12, p. 2.
[15] Rec. Doc. No. 1-1, ¶ 9.
[16] Rec. Doc. No. 10-1, p. 2; *see* Rec. Doc. No. 12-1, p. 21.

I have been discriminated against because of my race (Black), and because of my sex (Female), and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.[17]

On November 19, 2019, the EEOC issued a dismissal and a "Notice of Right to sue." The EEOC issued a "no cause" determination stating, "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained established violations of the statutes… No finding is made as to any other issue that might be construed as having been raised by this charge."[18]

Defendant previously filed a *Motion for Partial Dismissal* on two grounds. First, Defendant argued that to the extent any sexual harassment claim was asserted by the Plaintiff's petition that the claim be dismissed as time barred.[19] Second, Defendant moved to dismiss the claim against him in his individual capacity under Title VII.[20] On June 17, 2020, the *Motion for Partial Dismissal* was granted by this Court.[21]

Defendant now moves for a Rule 12(c) judgment on the pleadings for failure to exhaust administrative remedies, arguing that, in her EEOC Charge, Plaintiff never mentioned any of the following allegations set forth in her petition: "(1) any type of harassment occurring before October 24, 2018; (2) Greg Brown or Howard Burgess; (3) sexual harassment by Greg Brown; or, (4) retaliation for reporting alleged sexual harassment by Greg Brown."[22] Defendant notes that Greg Brown's name does not appear anywhere on the Charge and solely focuses on the alleged conduct of Plunkett.

Plaintiff opposes this motion, arguing that Defendant's motion is actually an

---

[17] Rec. Doc. No 12-1, p. 21.
[18] Rec. Doc. Nos. 1-1, ¶ 10; 10-1, p. 2.
[19] *See* Rec. Doc. No. 2.
[20] *See* Rec. Doc. No. 2.
[21] Rec. Doc. No. 19.
[22] Rec. Doc. No. 10-1, p. 3.

improperly "disguised motion for summary judgment," and, whether on the face of her pleadings or on the merits, she has demonstrated that she met the Title VII requirements for filing suit.

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss Under Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  A judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under rule 12(b)(6).[23] The Court should accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, the non-moving party.[24]

A motion for judgment on the pleadings under Rule 12(c) is designed to dispose of a case where the material facts are not in dispute and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts.[25] Additionally, the court may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[26]

---

[23] *See Johnson v. Johnson*, 385 F.3d 503,529 (5th Cir. 2004); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that under a Rule 12(b)(6) motion." (citation and internal quotations omitted)).

[24] *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007); *See also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[25] *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per ciruam).

[26] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir.  2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). see also *Voest-Alpine Trading USA Corp v. Bank of China*, 142 F.3d 887 (5th Cir. 1998) (the district court's consideration of the documents attached to the complaint was proper because these documents became a part of the pleading); *King v. Life School*, 809 F.Supp.2d 572, 578 (N.D. Tex. 2011) ("Under the 12(b)(6) standard, a court cannot look beyond the pleadings. In the

"The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[27] "The issue is not whether the plaintiff will ultimately prevail, but whether [the plaintiff] is entitled to offer evidence to support his claim."[28] To survive a defendant's motion, a plaintiff must allege enough facts "to state a claim that is plausible on its face."[29] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[31] A complaint is insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[32] The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[33] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but not 'shown'-'that the pleader is entitled to relief.'"[34]

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there is no disputed issue of fact and only questions of law remain."[35] "If it is clear that the plaintiff can prove no set of facts that would entitle them to relief, then

---

12(b)(6) context, pleadings include attachments to the complaint." (citations and internal quotations omitted)).

[27] *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

[28] *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[31] *Id.* (*quoting Twombly*, 550 U.S. at 556).

[32] *Ashcroft v. Iqbal*, 556 US 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

[33] *Guidry v. Am Public Life Ins Co.* at 180.

[34] *Id.* at 678.

[35] *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

the court may dismiss the claim."[36] While the Court must accept all well-pleaded facts as true, it should not "strain to find inferences favorable to the plaintiff."[37] Further, the Court should not "accept as true conclusory allegations or unwarranted deductions of fact."[38] A Motion to dismiss under Rule 12(c), just like Rule 12(b)(6), is disfavored and rarely granted.[39]

Pursuant to Federal Rule of Civil Procedure 12(d) a motion under 12(c) may be converted to one under Rule 56. In that instance "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[40] Thus, in consideration of the *Motion for Judgment on Pleadings* under Rule 12(c) the Court may only consider the plaintiff's and defendant's pleadings and the EEOC Charge referenced in the plaintiff's pleading, which is integral to the matters pertained therein, without converting the motion to one under Rule 56.[41]

Plaintiff argues Defendant's motion is a disguised motion for summary judgment and, if necessary for her to demonstrate that she exhausted claims against Brown, she presents to the Court documents outside of the pleadings bearing out this fact.  Defendant maintains that the Court may make this determination on the face of the pleadings but argues that, even if looking at the documents Plaintiff has submitted, conversion to a

---

[36] *Jones v. Greninger*, 188 F.3d 422, 324 (5th Cir. 1999).

[37] *Taha v. William Marsh Rice University*, 2012 WL 1576009 at *2 (*quoting southland Sec. Corp. v. Inspire Ins solutions, Inc.*, 365 f3d 353, 361 (5th Cir. 2004).

[38] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000).

[39] See *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 288, 232 (5th Cir. 2009) (Rule 12(b)(6); *Boyd v. Dallas Indep. Sch. Dist.*, No. 3:08-cv-0426-M, 2009 WL 159243, at *1 (N.D. Tex. Jan 21, 2009) (*citing Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).

[40] Fed. R. Civ. P. 12(d).

[41] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d at 763.

motion for summary judgment is unwarranted, and Defendant's motion should still be granted.

The Court finds that it need not convert this motion to a motion for summary judgment.  As will be explained below, and as the Fifth Circuit has held: "this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, **but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination**."[42] In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label."[43]

### B. Title VII Exhaustion of Administrative Remedies

A plaintiff asserting a claim under Title VII must exhaust administrative remedies before pursuing the claim in district court.[44] Exhaustion occurs when a plaintiff files a timely charge with the EEOC, within 300 days,[45] and receives a statutory notice of the right to sue the employer named in the charge.[46] Because a plaintiff's Title VII claim must be administratively exhausted, a subsequent suit must be limited to the claims made in the employee's initial EEOC charge or any type of discrimination "like or related to the

---

[42] *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)( (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir.1970)) (internal quotation marks omitted).
[43] *Id.*
[44] *Taylor v. Books A Million*, 296 F.3d 376, 378-79 (5th Cir. 2002); *Davis v. Fort Bend Cty.*, 893 F.3d 300, 303 (5th Cir. 2018) (*citing* 42 U.S.C. § 2000e-5(e)(1)).
[45] While a plaintiff filing a Title VII claim must typically file within 180 days of the alleged discrimination, "deferral states" like Louisiana extend the filing period to 300 days when the complainant has instituted a complaint with a state or local agency which possesses the authority to grant or seek relief suck practices. *National R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 109 (2002); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (*citing* 42 U.S.C. § 2000e-5(e)(1)), abrogated on other grounds *McDaniel v. National Rail Road Passenger Corp.*, 705 Fed. Appx 240 (5th Cir. 2017); *Griffin v. city of Dallas*, 26 F.3d 610, 612 (5th Cir. 1994).
[46] *Taylor*, 296 F.3d at 378-79; *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996).

charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."[47]

A cause of action under Title VII "may be based, not only upon the specific complaints made by the employee's in the initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.[48]  This rule is designed to balance competing interests. On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship."[49] On the other hand, the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims."[50]

To reconcile these competing policies, the court should construe an EEOC complaint broadly, but also in the terms of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination."[51] The Court should use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance.[52] Thus, a lawsuit may contains allegations "like or related to

---

[47] *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)); see also *Harris v. Honda*, 213 Fed. App'x 258, 261 (5th Cir. 2006) (*citing Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 141 (Tex. App. 2000)).

[48] *Fine*, 995 F.2d at 578 (citing *Fellows*, 701 F.2d at 451).

[49] *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (*quoting Sanchez v. Standard Brands, Inc.*, 431 F.3d 455, 456 (5th Cir. 1970).

[50] *Id.* (*quoting Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006).

[51] *Id.* (*quoting Sanchez*, 431 F.3d at 466).

[52] *Id.*

the allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the commission."[53]

### C.    Analysis

Plaintiff's petition states that, "[o]n March 12, 2019, Petitioner timely filed a Charge of Discrimination with the EEOC and was issued her Notice of Right to Sue dated November 12, 2019, a copy of which is attached hereto. All conditions prerequisite to filing suit under federal law have been complied with."[54] The Defendant's *Answer* admits this allegation to the extent that the Plaintiff filed a Charge of Discrimination and received a Dismissal and Notice of Rights but denies any remaining allegations contained in the petition.[55]

Looking at the EEOC Charge and engaging in a "fact intensive analysis of the statement given," and "only looking slightly beyond its four corners, to its substance rather than its label,"[56] the factual allegations in the Charge represent that Plaintiff was harassed by Pamela "Pluckett" (Plunkett) who cursed and talked down to Plaintiff.[57] The Charge also reads that, after reporting the harassing behavior to "Pluckett's" supervisor, Brandon Abadie ("Abadie"), the harassment progressed, and Plaintiff was "disciplined [] several times for no reason including an unpaid suspension. Ultimately, I was discharged although the company claims I resigned."[58] The Plaintiff states that she was given unfavorable references although she always received good performance evaluations, and

---

[53] *Id.*
[54] Rec. Doc. No. 1-1, ¶ 11.
[55] Rec. Doc. No. 3, ¶ 11.
[56] *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).
[57] Rec. Doc. No 12-1, p. 21.
[58] *Id.*

"[n]o reason was given for the action taken against me."[59] Plaintiff's Charge concludes by stating: "I have been discriminated against because of my race (Black), and because of my sex (Female), and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended."[60]

Plaintiff's Charge pertains to alleged harassment at the hands of Plunkett and alleged subsequent retaliation for reporting same. In contrast, the allegations of Plaintiff's petition substantially refer to actions taken by Brown and seldom mention Plunkett.[61] While this fact is notable, it is not determinative. Plaintiff can bring an action in federal court under Title VII that relates to the initial charge or any type of discrimination "like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."[62] As such, if the matters contained in Plaintiff's EEOC investigation documents are reasonably likely to grow out of the allegations contained in the EEOC charge, then Plaintiff will have exhausted her administrative remedies and her suit can proceed in federal court.[63]

Plaintiff's Charge states: "After reporting Ms. Plucketts [sic] behavior, the harassment progressed, and she disciplined me several times for no reason including an unpaid suspension … I have been discriminated against because of my race (Black), and because of my sex ("Female"), and retaliated against in violation" of the law.[64] The petition

---

[59] *Id.*

[60] *Id.*

[61] Rec. Doc. No. 1-1, *passim.*

[62] *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)); see also *Harris v. Honda*, 213 Fed. App'x 258, 261 (5th Cir. 2006) (*citing Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 141 (Tex. App. 2000)).

[63] *Id.*

[64] Rec. Doc. No. 12-1, p. 21.

states that Brown "began retaliating against her for complaints and opposition to the sexual harassment. Defendant threatened Petitioner's job, issued her false reprimands, removed job duties, made false accusations of poor performance, transferred her to the Airline Highway office, an undesirable duty, suspended her, and ultimately, terminated her because of her protected activity.[65]

In the Court's view, there are two questions to answer to resolve this motion. First, can the Court look to documents relating to the EEOC's investigation of the Charge under Rule 12(c)? Second, if so, do these documents demonstrate that the allegations in the petition were investigated such that Defendant was on notice of the allegations, and this claim was fully exhausted?

### 1.    Consideration of EEOC Investigation Documents

In *Brooks v. Firestone Polymers*, LLC,[66] the court set forth the appropriate standard to apply to the first question:

> Civil complaints filed under Title VII may only encompass discrimination "'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *McClain*, 519 F.3d at 273 (quoting *Sanchez*, 431 F.2d at 466); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir.1994); *see Dollis*, 77 F.3d at 781. Accordingly, the scope of the complaint is limited to "'the discrimination stated in the charge itself **or developed in the course of a reasonable [EEOC] investigation of that charge**.'" *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 712 (quoting *King v. Seaboard Coast Line R. Co.*, 538 F.2d 581, 583 (4th Cir.1976)); *see Pacheco*, 448 F.3d at 789–90; *Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000). As the Fifth Circuit has stated, although "the actual scope of an EEOC investigation does not determine whether a claim is exhausted, we are also mindful that investigation of a particular claim creates a strong inference that such a claim was presented." *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir.1994).

---

[65] Rec. Doc. No. 1-1, ¶ 7.
[66] 70 F. Supp. 3d 816, 841-42 (E.D. Tex. 2014)(emphasis added).

Several other courts have addressed this issue. In *Cargo v. Kansas City Southern*, the district court for the Western District of Louisiana addressed the issue of exhaustion under various employment statutes where the plaintiff's EEOC charge did not include certain allegations in her complaint.[67]  The plaintiff argued that the court should consider not only the substance of her initial charge but also to a letter she wrote to the EEOC investigator, the Charge Questionnaire she filled out before submitting her Charge, and the EEOC submission of her co-plaintiffs.[68]

Relying on the Fifth Circuit's holding in *Pacheco*, the *Cargo* court stated:  "At issue in this case is the scope of the exhaustion requirement, which 'has been defined in light of two competing Title VII policies that it furthers.'"[69] As the Fifth Circuit has explained:

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.... [A]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.[70]

In evaluating the plaintiff's charge, the court noted that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of

---

[67] 2009 WL 3010835 (W.D. La. Sep. 16, 2009).
[68] *Id.* at *3.
[69] *Id.* at *2 (quoting *Pacheco*, 448 F.3d at 788-89).
[70] *Id.* (quoting *Pacheco*, 448 F.3d at 788-89)(internal citations and quotation marks omitted).

discrimination.'"[71] "For a particular 'alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination.'"[72]  The *Cargo* court also noted:

> Recently, in *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 128 S.Ct. 1147, 1158, 170 L.Ed.2d 10 (2008), the Supreme Court held that a document filed with the EEOC constitutes a "charge" for the purposes of the Age Discrimination in Employment Act ("ADEA") when "it [can] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 128 S.Ct. 1147, 1158, 170 L.Ed.2d 10 (2008). Other federal district courts have extended *Holowecki* to claims filed pursuant to Title VII rather than the ADEA. *See Beckham v. Nat'l R.R. Passenger Corp.*, 590 F.Supp.2d 82, 86 (D.D.C.2008) (holding that "because of the similarities between the statutory scheme of the ADEA and Title VII concerning exhaustion of administrative remedies," *Holowecki*'s holding concerning the interpretation of "charge" should be applied in the Title VII context); *see also Grice v. Balt. County*, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008), and cases cited therein.[73]

Applying this jurisprudence to the facts in *Cargo*, the court concluded that it could consider the plaintiff's letter to the EEOC investigator:

> The first sentence of Cloud's letter states: "I would like to add to my previous claim some important information that I hope you find helpful in your investigation. I would like to add discrimination based on hostile work environment and age." [Doc. 240, Ex. B7]. It is clear that Cloud sought, by writing the letter to Ms. Thompson, to amend the Charge of Discrimination she previously filed with the EEOC to include additional claims of discrimination. Because the letter presumably was filed after and in an apparent effort to amend the Charge of Discrimination, this Court will construe it as a request for the EEOC to take remedial action.[74]

---

[71] *Id.* (quoting *Turner v. St. Luke's Episcopal Health Sys.*, 2008 WL 706709 at *8 (S.D.Tex. Mar.14, 2008)).
[72] *Id.* (quoting *Turner*, at *8).
[73] *Id.*
[74] *Id.* at *3.

In *Trina Bowie v. Darnley R. Hodge, Sr., et al.*,[75] the district court for the Eastern District of Louisiana addressed a case very similar to the present case with respect to the issue of exhaustion.   There, the plaintiff's EEOC charge had checked boxes for discrimination based on race, sex, retaliation, and age; however, the defendants argued that the allegations in the plaintiff's complaint went far beyond those in the charge.[76] Much like the Defendant's argument in this matter that Plaintiff's Charge does not mention her petition allegations regarding Brown, the defendant in *Bowie* claimed that the plaintiff's EEOC charge did not mention a certain employee or any allegations related to his alleged harassment of her.[77]

The plaintiff urged the court not to consider her EEOC charge because she did not attach it to her complaint; however, the plaintiff also argued that, if the court considered her charge, it should also consider the position statement to the EEOC along with the position paper filed by Defendants.   The plaintiff claimed that "the EEOC intake investigator did not complete typing her entire narrative in the 'particulars' section of her EEOC charge," and that the exhaustion requirement must be construed liberally.[78]

The *Bowie* court held as follows:

> On the record before it, the court cannot determine whether Bowie exhausted her administrative remedies on all the claims made in her Complaint. As the defendants point out, the Complaint contains numerous allegations that are not raised in the EEOC charge. At least some of these new allegations seem to extend beyond the scope of the particulars alleged in the EEOC charge. But, the narrative statement in the EEOC charge cuts off, suggesting that additional information may have been inadvertently excluded by the EEOC staff member drafting the form. There might be a contemporaneously created EEOC intake questionnaire that reflects the details that were left out of the narrative statement. But the court has not

---

[75] 2021 WL 53312 (E.D. La. Jan. 6, 2021).
[76] *Id.* at *4-*5.
[77] *Id.* at *5.
[78] *Id.*

been presented with a copy. Bowie asserts that she filed a position statement that fully described her claims. But she has not presented that statement to the court.1 Nor does the court have the defendants' position statement, which could also reflect what claims were raised by the EEOC charge and any resulting investigation.[79]

Accordingly, the court stated it was "not now prepared to conclude that the new allegations could not have grown out of an EEOC investigation," and the court noted that the defendants could re-urge the argument if additional documentation submitted supported their position.[80]   Thus, the court would consider documents relating to the EEOC investigation of the plaintiff's initial charge to determine whether she had exhausted the claims raised in her complaint.

In *Herster v. Board of Supervisors of Louisiana State University*,[81] another section of this Court addressed the proper scope of an EEOC charge for purposes of determining whether claims in the complaint had been exhausted.   In *Herster*, the defendant challenged certain allegations during certain dates as being beyond the scope of the charge and not actionable.[82]   Rejecting the defendant's argument, the Court held:

> LSU's argument that Herster should be denied the liberal construction fails. Given the wording of Herster's claim, which states that she was denied promotion in favor if a man and alleges that complaints to the Human Resources Department produced no results, **it is reasonably foreseeable that the investigation would explore events prior to the promotion**; this would be necessary to evaluate the validity of her claim regarding the basis for LSU's choice in promoting Ostrenko over her.[83]

---

[79] *Id.*
[80] *Id.*
[81] 72 F.Supp.3d 627 (M.D. La. 2014).
[82] *Id.* at 642-43.
[83] *Id.* at 643 (emphasis added).

In *Hayes v. MBNA Technology, Inc.* a plaintiff's EEOC Charge stated that she was "denied a promotion."[84] As a result, the EEOC could reasonably be expected to investigate why she did not get a higher position," but when the plaintiff attempted to assert a demotion-based claim "it was not reasonably expected for the EEOC to investigate "why she lost the job she held."[85]

Based on the above, the Court finds that it can consider documents submitted to the EEOC in investigating Plaintiff's Charge on this Rule 12(c) motion without converting the motion to a Rule 56 summary judgment. Defendant acknowledges as much.[86] The Court now considers whether Plaintiff's allegations against Brown were investigated by the EEOC such that Defendant was on notice of these allegations and the claim was fully exhausted.

2.    <u>Were the Brown Allegations Exhausted?</u>

Plaintiff relies heavily on the documents submitted with her *Opposition*, namely the position statement submitted by Defendant and her rebuttal statement submitted to the EEOC. Based on the foregoing jurisprudence, the Court will not consider any evidence submitted that was not clearly part of the EEOC investigation file. In determining whether Plaintiff exhausted her retaliation claims against Brown, the Court will look at these two documents and their contents relating to Brown.

Defendant's position paper includes the following statements related to Brown: "Chief Deputy Greg brown decided to transfer Ms. Bracken to the Mortgage Department

---

[84] *Hayes v. MBNA Technology, Inc.*, No. Civ.A.3:03-CV-1766-D, 2004 WL 1283965 (N.D. Tex. June 9, 2004).

[85] *Id.* at 6.

[86] Rec. Doc. No. 16, p. 6.

Document Number: 64827                                                                17

located at the Clerk's Airline Highway Branch Office."[87]  "After she returned to work from the suspension … Chief Deputy Greg Brown … met with Ms. Bracken.  The purpose of this meeting was to provide Ms. Bracken with a final written warning letter and to discuss the changes that needed to take place going forward ... ."[88]  During this meeting, "Ms. Bracken became immediately 'defensive,' 'hostile,' 'argumentative,' 'aggressive,' and loud and … became 'combative,' yelling and accusing Mr. Brown of harassment."[89] These are the sole mentions of Brown in Defendant's position statement submitted to the EEOC.

Plaintiff was asked by the EEOC to submit a rebuttal to Defendant's position paper. On page one of this rebuttal, Plaintiff notes:

> I want to explain to you when I visited your agency for the first time (on March 12th), Mr. Morgan, the intake investigator, stated "I could address all of the issues that affected me at the Clerk of Court's office:  however, he could only address employment related issues within a 300 day time frame, but I had the opportunity to address any and all issues with my assigned investigator (i.e., Sexual Harassment by Mr. Gregory Brown, the Suspension from Mr. Brandon Abadie due to retaliation from the supervisor, Pamela Pluckett, and the discrimination concerning wages … ."[90]

Plaintiff later notes:  "Mr. Brown continue[d] to tell me 'you are going to do what I say do and all I can think about Mr. Brown in his office tell me about how he watched me out of the window.'"[91] "I am a strong black woman because, I walked away from Mr. Brown advancements … This man sexually harassed single black women who he felt needed money and/or their jobs."[92]  During a November 2018 phone call with Shirley Dupre,

---

[87] Rec. Doc. No. 12-1, p. 26.
[88] *Id.* at p. 28.
[89] *Id.*
[90] *Id.* at p. 67.
[91] *Id.* at p. 74.
[92] *Id.* at p. 75.

Plaintiff states:  "Mr. Brown came to the Airline office and asked Pam Pluckett, 'what took you so long to get rid of Barbara.'  I mentioned I am a strong back woman to Mr. Brown, because Mr. Brown approached me inappropriately in a sexual harassment matter.  I refused to accept his advancements.  The Chief (Mr. Brown) … came to attack me for his personal revenge."[93]

Regarding Defendant's position paper, Plaintiff stated:  "Please note that [Defense Counsel] has completely ignored the above-referenced charge, and has completely omitted the sexual harassment perpetrator, Mr. Gregory Brown, the Chef (sic)."[94]  Plaintiff summarized her claims against Brown:

> Mr. Brown has engaged in inappropriate sexual advances toward me during my employment with Agency, as I have explained in this correspondence, starting in late 2013.  Due to my unwillingness to succumb to his sexual overtures, he retaliated against me by engaging in false accusations with the cooperation of Ms. Karen (Lands) and Ms. Pamela (Pluckett).  These two employees were able to meet directly with him to smear my name and reputation at work.  Please note that after my termination, some co-workers and former co-workers have contacted me to share their stories about Mr. Brown approaching them with inappropriately sexual behavior.  These anecdotes have a similar pattern of Mr. Brown's modus operandi, which is to learn about the employee's personal issues or problems, and then use this information to call the victim into his office and officer applicable assistance for sexual gain.[95]
>
> …
>
> In conclusion, please note that Mrs. Wells never provided me with any written or verbal response or communication relative to the many e-mails and letters concerning my mistreatment, sexual harassment claims, and employment retaliation at the Clerk of Court … Throughout this ordeal, Mrs. Wells did not show any empathy for me being harassed on the job.[96]

---

[93] *Id.* at p. 76.
[94] *Id.* at p. 78.
[95] *Id.* at p. 79.
[96] *Id.* at p. 80.

Plaintiff further states that she was "approached wrongfully" by Brown, and he would use others to "falsely accuse [her] of rude behavior."[97] "The meetings orchestrated by Mr. Brown were very stressful to me and to my health."[98] Plaintiff states that Brown tried to pressure her to resign, but she did not.[99] Plaintiff recounts one incident when Brown allegedly made a pass at Plaintiff and she responded with "hash tag, Me Too," to which Brown allegedly responded: "I've known you a long time" (and he stood up) and raised his voice by saying, "Nobody is Going to Believe You" (and uttered something I cannot recall) about lawyers.[100]

Defendant acknowledges that, "to the extent the documents attached by Ms. Bracken are contained in the EEOC Charge file (i.e., Defendant's Statement of Position to the EEOC and Bracken's rebuttal), they are public records, are authentic and unopposed, subject to judicial notice and, thus, can be considered by the court" in this Rule 12(c) without converting it to a motion for summary judgment.[101] However, Defendant claims that the documents Plaintiff wants the Court to consider are not signed under oath or otherwise verified; thus, they do not meet the definition of a Charge of Discrimination and do not demonstrate exhaustion under Fifth Circuit law. Additionally, Defendant contends there is no evidence to suggest that the EEOC treated Plaintiff's rebuttal as a charge or investigated all the claims asserted therein, and Defendant claims this rebuttal was never served upon Defendant by the EEOC. Defendant's position

---

[97] *Id.* at p. 81.
[98] *Id.*
[99] *Id.*
[100] *Id.* (internal punctuation modified).
[101] Rec. Doc. No. 16, p. 6.
Document Number: 64827

statement addressed only those claims that appear in the Charge and not anything relating to sexual harassment or retaliation at the hands of Brown.

Defendant cites to *Reyes v. Tidewater Inc.*, an ADA case where the court was faced with deciding whether the plaintiff's letter to the EEOC legally constituted a "charge."[102]  The court noted the standard to apply in making this determination:

> For plaintiff's letter to be deemed a charge, it must (1) comply with EEOC regulations and (2) "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). The filer's state of mind when drafting the document is not the determinative question; rather, the court must examine the document "from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id.* The *Holowecki* decision permits "a wide range of documents" to be classified as charges. *Id.* The standard is consistent with the statutory purpose of the ADA and ADEA, which "set[ ] up a 'remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process[es].' " *Id.* at 402-03 (quoting *EEOC v. Commercial Prods. Co.*, 486 U.S. 107, 124 (1988)). A charge can thus be "a form, easy to complete, or an informal document, easy to draft." *Id.* at 403.[103]

The court then evaluated the plaintiff's letter and found that, "Plaintiff's letter does not contain a sworn verification, and thus does not comply with the EEOC regulations and cannot constitute a charge . . . ."[104]

However, in *Herster* discussed above, another section of this Court set forth the standard for this determination under Title VII:

> An EEOC charge must be "in writing under oath or affirmation." 42 U.S.C. § 2000e–5. This requirement shields "employers from the disruption and expense of responding to a claim unless a complainant is serious enough ... to support it by oath subject to liability for perjury." *Edelman v. Lynchburg College*, 535 U.S. 106, 113, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). LSU claims that because Herster's "supplemental EEOC charge" was a letter to

---

[102] 2018 WL 4739671 (E.D. La. Oct. 2, 2018).
[103] *Id.* at *3.
[104] *Id.*

an EEOC employee that was not verified, it cannot be considered an EEOC charge. (Doc. 61–1 at 5). Therefore, the allegations within it should not be actionable because Herster failed to exhaust her administrative remedies concerning these claims; LSU also points out that they did not get notice of this letter until the discovery stage of this lawsuit. *Id.* at 5–6. Herster sticks with the liberal construction argument. (Doc. 77 at 32–33). Though her charge only covers events before it was filed, it is reasonable to expect that similar events occurring after the charge would be subject to potential litigation, including the non-renewal of her contract—the alleged retaliatory action. Therefore, summary judgment seeking dismissal of claims based on events after Herster filed her initial charge should be denied.[105]

Thus, the *Herster* court still considered the plaintiff's letter to the EEOC investigator despite it not being sworn or verified.

The Court has considered the above arguments and jurisprudence and has considered a plethora of additional case law on this issue.  The Court, construing all allegations in the light most favorable to Plaintiff, shall deny Defendant's motion, as it appears Plaintiff did provide these allegations to the EEOC.  It is not clear whether the EEOC actually investigated Plaintiff's claims against Brown from these documents.  Should Defendant have summary judgment evidence to demonstrate that these claims were not exhausted, it may so move.

---

[105] *Herster*, 72 F.Supp.3d 627, 643-44.
Document Number: 64827

III.    **CONCLUSION**

For the foregoing reasons, Defendant's *Motion for Judgment on the Pleadings Pursuant to Rule 12(c)*[106] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 25th day of January, 2021.

_Shelly D. Dick_

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[106] Rec. Doc. No. 10.
Document Number: 64827